Case No. 23-7031

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

**LAMONE M. JOHNSON**
**Plaintiff-Appellant**

**v.**

**DR. SANDERS, et al.,**
**Defendants-Appellees**

**Appeal from United States District Court for the Eastern District of Oklahoma of Orders dated April 8, 2022 and May 9, 2023 Granting Defendants' Motion For Summary Judgment.**

**Orders entered by United States District Judge John F. Heil, III Case No. CIV-19-269-JFH-JAR**

**DEFENDANTS-APPELLEES'**
**ANSWER BRIEF**

**NO ORAL ARGUMENT REQUESTED**
**BY DEFENDANTS-APPELLEES**
By: DARRELL L. MOORE, OBA 6332
COURT PLACE AT NORTH VANN
P.O. BOX 368
PRYOR, OK  74362
(918) 825-0332
Dated: September 7, 2023

ATTORNEY FOR DEFENDANTS-APPELLEES - Sanders, Larimer, Martinez, Morrison and Taylor

# TABLE OF CONTENTS

CERTIFICATE OF COUNSEL ........................................................ 2

BACKGROUND ............................................................................... 2

STATEMENT OF CASE ................................................................. 2

STATEMENT OF ISSUE ................................................................ 4

STANDARD OF REVIEW .............................................................. 4

ARGUMENT AND AUTHORITY ................................................. 6

PROPOSITION I:  The District Court Did Not Err.
Sanders And Larimer Were Entitled to Summary Judgment ........... 6

PROPOSITION II: The District Court Did Not Err.
Plaintiff-Appellant Failed To Properly Exhaust
Administrative Remedies. .............................................................. 11

CONCLUSION ............................................................................... 14

NECESSITY OF ORAL ARGUMENT ........................................ 14

CERTIFICATE OF COMPLIANCE ............................................ 15

CERTIFICATE OF DELIVERY ................................................... 16

EXHIBIT 1: Orders dated April 8, 2022 & May 9, 2023 ......... 17-37

i

Jernigan v. Stuchell,
304 F.3d 1030 (10th Cir. 2002) ……………………………………..12

Loard v. Sorenson, 561 Fed. Appx. 703, 705 (10th Cir. 2014)……………6

Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse
Servs., 165 F.3d 1321, 1326 (10th Cir.1999)…………………………….6

Van Sickle v. Holloway, 791 F.2d 1431, 1434 (10th Cir.1986) …...........5

Yellen v. Cooper, 828 F.2d 1471, 1475 (10th Cir.1987)………...........5

Yousuf v. Cohlmia, 741 F.3d31, 37 (10th Cir.2014) …………...........5

Whitney v. State of N.M., 113 F.3d 1170, 1172
(10th Cir. 1997) ……………………………………………………….…7

Whitley v. Albers, 475 U.S. 312, 319 (1986)…………………………….6

**Prior / Related Appeals:**

Counsel is unaware of any actually "related" appeals, other than the present action.

# TABLE OF AUTHORITIES

**Statutes**

42 U.S.C. § 1983 .................................................................. 2,3,11

42 U.S.C. § 1997(a) .................................................................. 11

28 U.S.C. § 1915 .................................................................. 6

**Rules**

Fed. R. App. P. 32(a)(7)(C) .................................................................. 11

Fed. R. App. P. 34(a) .................................................................. 14

Tenth Cir.R. 31.3 .................................................................. 2

Tenth Cir.R. 34.1 .................................................................. 14

Fed.R.Civ.P. 56(a) & (c) .................................................................. 6

**Cases**

Booth v. Churner, 532 U.S. 731, 121 S. Ct. 1819,
149 L. Ed. 2d 958 (2001)…………………………………………………12

Ciempa v. Ward, 150 Fed. Appx. 905, 907 (10th Cir. 2005) ...…………..6

Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197,
167 L.Ed.2d 1081 (2007) ………………………………………………....6

Green v. Seymour, 59 F.3d 1073, 1077 (10th Cir.1995) ………………....6

Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir.1999) …………………..8

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

**LAMONE M. JOHNSON,**

        **Plaintiff-Appellant,**

**vs.**

           **Case No. 23-7031**

**DR. SANDERS, et. al.,**

        **Defendants-Appellees.**

---

## DEFENDANTS-APPELLEES' ANSWER BRIEF

---

COME NOW Defendants-Appellees Sanders, Larimer, Martinez, Morrison, and Taylor (hereinafter "Defendants-Appellees") by and through their attorney of record, Darrell L. Moore, OBA #6332, submitting their Answer Brief in response and opposition to the opening Brief of Plaintiff-Appellant Johnson.

The District Court did not err in granting the Defendants-Appellees' Motion for Summary Judgment. As was clearly set forth in Defendants' Motion and outlined in detail by the District Court in its Order, Defendants Sanders and Larimer were not deliberately indifferent to Plaintiff's medical needs. And Plaintiff-Appellant Johnson failed to exhaust administrative remedies as to any claim or issue regarding Defendants Martinez, Morrison, or Taylor.

Simply put, there was no error below. This Honorable Court should affirm the

decisions of the United States District Court for the Eastern District of Oklahoma.

## CERTIFICATE OF COUNSEL

In accordance with Tenth Cir.R.31.3, counsel for Defendants-Appellees certifies that he is filing a joint brief on behalf of all CoreCivic Defendants.

## BACKGROUND

Plaintiff-Appellant Johnson (ODOC #744047) appears *pro se.* Plaintiff-Appellant remains under the care and custody of the Oklahoma Department of Corrections and is presently confined by the Oklahoma Department of Corrections at the Oklahoma State Penitentiary. Plaintiff-Appellant had been housed by Oklahoma DOC at Davis Correctional Facility, Holdenville, Oklahoma, pursuant to an incarceration services contract between CoreCivic, Inc., and Oklahoma Department of Corrections. CoreCivic, Inc., owns and operates the Davis Correctional Facility. Defendants-Appellees Sanders, Larimer, Martinez, Morrison, and Taylor were employees of CoreCivic at Davis Correctional Facility. Plaintiff-Appellant brought this action pursuant to the provisions of 42 U.S.C. § 1983.

## STATEMENT OF THE CASE

1.     On August 14, 2019, Plaintiff-Appellant Johnson initially filed this action with the United States District Court for the Eastern District of Oklahoma. *See* ROA Vol I., Doc# 010110881265 Pgs. 12-44.

2.     On August 16, 2019, the District Court determined Plaintiff-Appellant

could not proceed jointly with another inmate and Ordered each Plaintiff to file a separate amended civil rights complaint. *See* ROA Vol I., Doc# 010110881265 Pgs. 45-51.

3.     Plaintiff-Appellant filed an Amended Complaint, with exhibits, on September 9, 2019. *See* ROA Vol I., Doc# 010110881265 Pgs. 52-65, and Exhibits at Pgs. 66-263.

4.     Counsel entered an appearance on behalf of Defendants Sanders, Larimer, Martinez, Morrison, and Taylor, and requested the District Court enter an Order directing the preparation and filing of a Report of Review of Factual Basis of Claims as Asserted in Civil Rights Complaint pursuant to 42 U.S.C. § 1983.  *See* ROA Vol I., Doc# 010110881265, Pgs. 264-266. The Court-ordered *Special Report* was filed on January 28, 2020.

5.     Defendants-Appellees filed an Answer to Plaintiff-Appellant's Amended Complaint on January 28, 2020. *See* ROA Vol I., Doc# 010110881265, Pgs. 269-274.

6.     Defendants-Appellees filed a Motion for Summary Judgment on April 2, 2021, asserting that Defendants-Appellees had not denied Plaintiff-Appellant access to medical or mental health treatment; and, that Plaintiff-Appellant had not properly exhausted administrative remedies and/or had failed to state a claim or claims upon which relief could be granted. *See* ROA Vol II., Doc# 010110881266,

Brief at Pgs. 12-37, Exhibits 1-12 at Pgs. 38-140.

7.      Plaintiff-Appellant responded to Defendants-Appellees' Motion for Summary Judgment on July 19, 2021. *See* ROA Vol II., Doc# 010110881266, Pgs. 141-176, Exhibits Pgs. 177-437.

8.      On April 8, 2022, the District Court entered an Opinion and Order granting the Defendants-Appellees' Motion for Summary Judgment and entered Judgment in favor of Defendants-Appellees. *See* ROA Vol. II., Doc# 010110881266, Pgs. 438-453.

9.      On April 25, 2022, Plaintiff-Appellant filed a Motion to Amend or Alter the District Court's Judgment. *See* ROA Vol. II., Doc# 010110881266, Pgs. 454-462.

10.     On May 9, 2023, the District Court entered an Opinion and Order denying the motion to alter or amend the earlier entered Judgment. *See* ROA Vol. II., Doc# 010110881266, Pgs. 480-485.

11.     It is from these Orders that Plaintiff-Appellant appeals.

## STATEMENT OF ISSUE

1.      Whether the District Court erred by granting Defendants-Appellees' Motion for Summary Judgment.

## STANDARD OF REVIEW

The United States District Court for the Eastern District of Oklahoma granted Defendants-Appellees' Motion for Summary Judgment.

The United States Court of Appeals for the Tenth Circuit reviews a grant of summary judgment *de novo*, drawing all reasonable inferences and resolving all factual disputes in favor of the non-moving party. *See* <u>Yousuf v. Cohlmia</u>, 741 F.3d 31, 37 (10th Cir.2014). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Because Plaintiff-Appellant is proceeding *pro se*, the Court must construe those filings liberally. *See* <u>Loard v. Sorenson</u>, 561 Fed. Appx. 703, 705 (10th Cir. 2014); <u>Erickson v. Pardus</u>, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (*per curiam*).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).   In applying this standard, the Court examines the factual record in the light most favorable to the nonmoving party.  *See* <u>Ciempa v. Ward</u>, 150 Fed. Appx. 905, 907 (10th Cir. 2005).

This Honorable Court has stated that dismissal under § 1915(d) is proper where no rational argument on the law and facts in support of a claim can be made. *See* <u>Yellen v. Cooper</u>, 828 F.2d 1471, 1475 (10th Cir.1987) (quoting <u>Van Sickle v. Holloway</u>, 791 F.2d 1431, 1434 (10th Cir.1986)). And this court reviews a district court dismissal for failure to exhaust under § 1915(d) for an abuse of discretion.

*See* Green v. Seymour, 59 F.3d 1073, 1077 (10th Cir.1995); and Whitney v. State of

N.M., 113 F.3d 1170, 1172 (10th Cir. 1997).

## ARGUMENT AND AUTHORITIES

## PROPOSITION I:

### THE DISTRICT COURT DID NOT ERR.
### SANDERS AND LARIMER WERE ENTITLED TO
### SUMMARY JUDGMENT

Below, the District Court succinctly outlined Plaintiff-Appellant's medical

claims allegations related to the management of gender non-confirming inmates and

whether or not the Oklahoma DOC policy and enforcement thereof is constitutional,

or not. Dr. Fred Sanders was the 'qualified medical provider' at Davis Correctional

Facility when Plaintiff-Appellant was at that prison. Ray Larimer, R.N., was the

Health Services Administrator at the prison facility.

In its Opinion and Orders, the District Court clearly restated Plaintiff-

Appellant's history, both mental and medical, and noted Plaintiff-Appellant's

allegations directed at Dr. Jones (i.e., Patricia Jones, Ph.D., Deputy Chief Mental

Health Officer at Oklahoma Department of Corrections, not a party to this action).

A copy of Dr. Jones' report is included in the Record on Appeal. The report was

attached by Plaintiff-Appellant to her response to Defendants-Appellees' Motion for

Summary Judgment as Exhibit 14. *See* ROA Vol II. DOC# 010110881266  Pgs. 226-

234.

In the District Court's Order of May 9, 2023, the Court again took note that Plaintiff-Appellant had been evaluated in May of 2018, and that an eight (8) page confidential psychological report and a one-page statement of findings had been issued following that evaluation.

As is well known to this Honorable Court, an Eighth Amendment violation occurs when prison officials "act deliberately and indifferently to serious medical needs of prisoners in their custody." *See* Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir.1999). And such a claim has both an objective and a subjective component. Id.

Not every claim of inadequate medical treatment rises to the level of a constitutional violation. For example, claims of medical malpractice or medical negligence have been determined to not equate to a constitutional violation. *See* Whitley v. Albers, 475 U.S. 312, 319 (1986) (Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety"). Likewise, a disagreement over the course of treatment has been held to not amount to a constitutional violation.

Oklahoma DOC policies are followed at the Davis Correctional Facility. The Oklahoma DOC promulgated Policy OP-140147, entitled Management of Gender Nonconforming Inmates. *See* Policy 140147, Exhibit 5 to Defendants' Motion for Summary Judgment, ROA Vol. II., Doc# 010110881266, Pgs. 60-66. At paragraph I(H) of OP-140147, gender dysphoria is defined as, *A condition where there is*

*clinically significant discontent or distress with one's sex assigned at birth and/or the gender roles associated with that sex. See* Policy140147, Exhibit 5 to Defendants' Motion for Summary Judgment, .ROA Vol II., Doc# 010110881266, Pgs. 61.

To determine whether an inmate is gender nonconforming, paragraph II of OP-140147 directs that the following be taken into consideration – A. Self-identification as gender nonconforming by completing a "self-report form; B. Diagnosis of Gender Dysphoria has been confirmed by a qualified mental health professional based on the diagnostic criteria of the *Diagnostic and Statistical Manual of Mental Disorders*; C. Inmate's appearance and/or behavior does not match the gender identity on his or her documents. *See* Policy140147, Exhibit 5 to Defendants' Motion for Summary Judgment, .ROA Vol II., Doc# 010110881266, Pgs. 61-62.

Paragraph IV(C)(1) of Oklahoma DOC policy OP-140147 outlined the process for when hormonal treatment of inmates with gender dysphoria may be undertaken. According to the DOC policy in place at the time, hormonal treatment may be undertaken only after all the following occurs – (a) Diagnosis of Gender Dysphoria has been confirmed by a qualified mental health professional based on the diagnostic criteria of the *Diagnostic and Statistical Manual of Mental Disorders*; (b) Male to Female Hormonal Therapy Risk Information Form is read, signed by the inmate and scanned into the inmate's electronic health record. *See* Policy 140147, Exhibit 5 to Defendants' Motion for Summary Judgment, .ROA Vol II., Doc# 010110881266,

Pgs. 63.

According to the policy at paragraph IV(C)(2), once the above steps have been completed, hormonal treatment may be considered by the qualified medical provider if the following – (a) Hormonal treatment was initiated prior to incarceration; or, (b) Surgical castration has occurred, verified by examination and/or medical records; or, (c) The facility medical provider determines hormone treatment is medically necessary and approval from the Chief Medical Officer is obtained. *See* Policy 140147, Exhibit 5 to Defendants' Motion for Summary Judgment, .ROA Vol II., Doc# 010110881266, Pgs. 63-64.

Plaintiff-Appellant Johnson was evaluated by Dr. Jones on May 1, 2018. Dr. Jones, ODOC staff psychologist, interviewed Plaintiff-Appellant about her family, social and transgender history, her education and employment history, her social and relational history, her criminal history, and her psychiatric and substance abuse history. *See* Dr. Jones' Report which was attached to the Plaintiff-Appellant's Response to Defendants-Appellees' Motion for Summary Judgment as Exhibit 14. *See* ROA Vol II. DOC# 010110881266  Pgs. 226-234.

Dr. Jones considered all of Plaintiff-Appellant's Oklahoma DOC medical records. Dr. Jones administered a mental status examination. Dr. Jones reviewed relevant self-report assessments. Dr. Jones conducted a field file review and a comprehensive review of Plaintiff-Appellant's Offender Management System

records. After all these reviews, Dr. Jones concluded that Plaintiff-Appellant's anger, anxiety, reported episodes of depression, substance use, and extreme difficulty in social situations were best explained by Personality Disorder, not Gender Dysphoria. *See* Dr. Jones' Report at ROA Vol II. DOC# 010110881266, Pgs. 226-234.

The District Court did not err. The District Court made a careful examination of the records provided by the parties. Those records clearly demonstrated that Plaintiff-Appellant was evaluated by Davis facility medical staff and mental health staff upon arrival at the Davis facility. The records clearly demonstrated that Dr. Sanders conducted a review of Plaintiff-Appellant's medical chart and noted Dr. Jones had rejected a diagnosis of gender dysphoria for Plaintiff-Appellant. Without a confirmed diagnosis, which was Step 1 under the Oklahoma DOC policy there could be no further progression. And the record also clearly showed that Plaintiff-Appellant had refused and waived all mental health services and medications.

Based upon the records and a careful review, the District Court correctly determined there were no genuine issues of material fact that  Dr. Sanders and Nurse Larimer were deliberately indifferent to Plaintiff-Appellant's medical needs. As noted by the District Court, a disagreement by Plaintiff-Appellant with Dr. Jones' report did not create a reasonable inference of deliberate indifference by Dr. Sanders or Nurse Larimer.

The District Court's Order should be affirmed by this Honorable Court.

## PROPOSITION II:

### THE DISTRICT COURT DID NOT ERR.
### PLAINTIFF-APPELLANT FAILED TO *PROPERLY* EXHAUST
### ADMINISTRATIVE REMEDIES.

The Prison Litigation Reform Act (PLRA) directs that no action shall be brought with respect to prison conditions under section 1983, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. *See* 42 U.S.C. §1997e(a).

Both <u>Booth v. Churner</u>, 532 U.S. 731, 740-41 (2001) and <u>Yousef v. Reno</u>, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001) note the clear requirement that inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. And "an inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim." *See* <u>Jernigan v. Stuchell</u>, 304 F.3d 1030, 1032 (10th Cir. 2002).

This Honorable Court knows well the Oklahoma DOC process for inmates to use in exhausting administrative remedies. The Oklahoma Department of Corrections has promulgated Grievance Policy OP-090124. *See* DOC Grievance Policy attached as Exhibit 11 to Defendants' Motion for Summary Judgment, ROA Vol. II., Doc# 010110881266, Pgs. 110-131. The DOC OP-090124 sets out specific steps an inmate must complete in order to exhaust administrative remedies.

Under the Grievance Policy an inmate first must attempt to resolve a complaint

informally by communicating with staff within three days of the incident.  If that is unsuccessful, the inmate may submit a Request to Staff (RTS) within seven calendar days of the incident, alleging only one issue per form.  If the inmate does not receive a response to the RTS within 30 calendar days of submission, the inmate may submit a grievance to the Review Authority, asserting only the issue of the lack of response to the RTS.  If the complaint is not resolved after the response to the RTS, the inmate then may file a grievance.  If the grievance also does not resolve the issue, the inmate may appeal to the Administrative Review Authority or the Chief Medical Officer. The administrative process is exhausted only after all of these steps have been properly completed.  *See* pgs. 12-15 of DOC Grievance Policy attached as Exhibit 11 to Defendants-Appellees' Motion for Summary Judgment, ROA Vol. II., Doc# 010110881266, Pgs. 110-131.

Plaintiff-Appellant Johnson's grievance records were attached to Defendant-Appellee's Motion for Summary Judgment as Exhibit 12, ROA Vol. II., Doc# 010110881266, Pgs. 132-140.  According to an affidavit from the facility's Grievance Coordinator, because of procedural inaccuracies the grievances were returned unanswered and Plaintiff-Appellant Johnson did not properly appeal any of the returned grievances to the Oklahoma Department of Corrections.  *See* affidavit of Terry Underwood, Grievance Coordinator attached to Defendant-Appellee's Motion for Summary Judgment as Exhibit 10, ROA Vol. II., Doc# 010110881266, Pgs. 103-

109, ¶ 8-18.  As a result, no grieved issue was properly exhausted.

Similarly, according to Sergeant Morrison, the Davis facility's Property Officer, Plaintiff-Appellant did not file a 14-6 property claim regarding personal property cosmetic items.  *See* affidavit of Mary Morrison, Property Officer attached to Defendant-Appellee's Motion for Summary Judgment as Exhibit 6, ROA Vol. II., Doc# 010110881266, Pgs. 67-71, ¶5-12. As a result, no personal property issue was exhausted.

Regarding claims made in the Amended Complaint by Plaintiff-Appellant against Defendants-Appellees Martinez and Taylor, the facility's Grievance Coordinator testified via affidavit that Plaintiff-Appellant submitted no grievances claiming retaliatory or discriminatory actions by Taylor or Martinez. *See* affidavit of Terry Underwood, Grievance Coordinator attached to Defendants-Appellees' Motion for Summary Judgment as Exhibit 10, ROA Vol. II., Doc# 010110881266, Pg. 109, ¶20.  As a result, no grieved issue was properly exhausted. As a result, any such claim was not properly exhausted.

This Honorable Court has repeatedly stated that the exhaustion requirement requires proper exhaustion. And, to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules.

The District Court properly determined that Plaintiff-Appellant's exhaustion

efforts were insufficient.  As a result, the District Court did not err in granting the

Defendants-Appellees' Motion for Summary Judgment.

## CONCLUSION

The District Court did not err. The District Court's decisions were consistent

with the record presented, the applicable law, clearly established standards of review,

and the Federal Rules of Civil Procedure.  This Honorable Court should affirm the

Orders of the United States District Court for the Eastern District of Oklahoma.

## NECESSITY OF ORAL ARGUMENT

Oral argument would not materially assist in the determination of this appeal.

*See* Federal Rules of Appellate Procedure 34(a), Tenth Circuit Rule 34.1.  This cause

should therefore be submitted without oral argument.


Respectfully submitted,
Defendant-Appellee

By: _  s/ Darrell L. Moore_
Darrell L. Moore, OBA #6332
P.O. Box 368
Pryor, OK  74362
(918) 825-0332
darrellmoore@jralphmoorepc.com
Attorney for Defendants-Appellees

14

## CERTIFICATE OF COMPLIANCE

As required by Fed.R.App. 32(a)(7)(C), I certify that this brief is proportionally spaced and contains 3,049 words.

*Complete one of the following*:
[x] I relied on my word processor to obtain the count and it is Microsoft Word, by Microsoft Office.

[ ] I counted five characters per word, counting all characters including citations and numerals.

*s/ Darrell L. Moore*
DARRELL L. MOORE

## CERTIFICATE OF DELIVERY

This is to certify that on September 7, 2023, a true and correct copy of the Appellees' Brief was mailed, postage prepaid, and to the following:

Lamone Johnson
OK DOC# 744047
Oklahoma State Penitentiary
1301 N. West Street
McAlester, OK 74502

I further certify that on September 7, 2023, the original and seven true and correct copies of the Appellees' Brief were mailed, postage prepaid, and e-submitted, to:

Elizabeth Shoemaker
Clerk of the Court
United States Court of Appeals for the Tenth Circuit
Byron White United States Courthouse
1823 Stout Street
Denver, CO 80257

I further certify that all privacy redactions have been made to the attached document, and with all exception of those redactions, the document submitted in digital form is an exact copy of the written document filed with the clerk, and the digital submission has been scanned for viruses by Kaspersky, and according to the program is free of viruses.

_s/ Darrell L. Moore_
DARRELL L. MOORE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

LAMONE MORLEE JOHNSON,

                Plaintiff,

v.                                             **No. 19-CV-269-JFH-JAR**

DR. SANDERS, et al.,

                Defendants.

## OPINION AND ORDER

This action is before the Court on Defendants' Motion for Summary Judgment ("Motion"). Dkt. No. 81. Plaintiff is an inmate in the custody of the Oklahoma Department of Corrections ("DOC") who is incarcerated at Lawton Correctional Facility in Lawton, Oklahoma. She brings this action under the authority of 42 U.S.C. § 1983, seeking monetary and injunctive relief for alleged constitutional violations during her incarceration at Davis Correctional Facility ("DCF"), a private prison located in Holdenville, Oklahoma.[1] The defendants are Dr. Sanders, DCF Physician; Ray Larimer, DCF Health Services Administrator; Ernesto Martinez, DCF Case Manager; Shanna Taylor, DCF Case Manager; and Sgt. Morrison, DCF Correctional Officer. The Court has before it for consideration Plaintiff's Amended Complaint [Dkt. No. 13], Defendants' motion [Dkt. No. 81], Plaintiff's Response to the Motion ("Response") [Dkt. No. 93], and a special report prepared by DCF officials at the direction of the Court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) ("Special Report") [Dkt. No. 31]. As discussed below, the Court concludes the Defendants' Motion should be granted.

---

[1] Because Plaintiff states she identifies as female, female pronouns are used in this Opinion and Order. *See Hardeman v. Smith*, 764 F. App'x 658, 659 n.1 (Feb. 22, 2019) (unpublished).

**Claim One**

Plaintiff, who asserts she is transgender, alleges in Claim One of the Amended Complaint that upon her arrival at DCF on May 15, 2018,[2] Defendant Sgt. Morrison destroyed her eye shadow, foundation, and lip gloss.  Plaintiff claims she had been allowed to order the items through the canteen while incarcerated at Joseph Harp Correctional Center ("JHCC") and was allowed to keep the items when she was transferred to Lexington Correctional Center.  DCF, however, would not allow her to keep them.  Dkt. No. 13 at 5-6.

Plaintiff asserts that when Defendant Sgt. Morrison found the cosmetics upon Plaintiff's arrival at DCF, Morrison told Plaintiff, "Oh hell no, he will not walk around at this facility with make-up."  Plaintiff claims she told Morrison that she is transgender with gender identity disorder and that the JHCC warden had approved them.  When Plaintiff asked Sgt. Morrison to refer to her with female pronouns, Morrison allegedly said, "You are a man in a man's prison.  You will not get your cosmetics unless approved by medical."  Morrison allegedly then confiscated and destroyed the cosmetics.  *Id.* at 7.

Plaintiff subsequently submitted two requests for health services (sick calls), however, the responses by Defendant Ray Larimer stated that the incident was not a "medical" issue.  Plaintiff claims she also submitted an "Inmate Request" to medical on the same day she sent the sick calls, but Defendant Larimer again responded that it was not a medical issue.  Plaintiff next filed a Request to Staff and began the grievance process.  She claims she exhausted her administrative remedies to the best of her knowledge and ability.  *Id.*

---

[2]  The Special Report indicates Plaintiff arrived at DCF on or about May 16, 2018.  Dkt. No. 31 at 4.

**Claim Two**

Plaintiff next claims that on May 15, 2018, Defendants Ray Larimer and Dr. Sanders interfered with Plaintiff's hormone replacement therapy ("HRT") by decreasing, then discontinuing, the medication.  Plaintiff contends she was sentenced to ten years of imprisonment in the DOC on August 26, 2016.  While detained at the Oklahoma County Sheriff's Office before sentencing, she continued to receive her HRT (estradiol) and spironolactone, a testosterone blocker.  When she was sent to DOC's Lexington Assessment and Reception Center on September 22, 2016, she was assessed and her HRT medication was continued.  She subsequently was transferred to North Fork Correctional Center where she signed an agreement to continue her HRT.  When she was transferred to JHCC and Dick Connor Correctional Center ("DCCC"), she allegedly was promised in an agreement with DOC that she would be monitored to see if she was benefitting from the hormones.  *Id.* at 5, 8-9.

Plaintiff alleges her breast tissue was approximately an A-cup size, however, her dysphoria about her body was not being relieved.  Therefore, she wrote to the Transgender Law Center, where she received a MTF (male-to-female) hormone guide.  Plaintiff then submitted a Request for Health Services at DCCC.  On March 26, 2018, the mental health services replied, "Ms. Johnson you have an order for undergarments."  *Id.* at 9; Dkt. No. 13-2 at 19.

On April 20, 2018, Plaintiff returned from a writ to the Oklahoma County Sheriff's Office, where she obtained a copy of her medical records.  The "Transfer Summary" stated a change in her HRT dosage.  Plaintiff submitted a sick call request, and she was informed that before she could receive an adjustment to her medication, a gender dysphoria evaluation was needed.  Plaintiff informed the doctor that she already had been evaluated by the Oklahoma County Sheriff's Office, however, she was advised that she needed an evaluation by a DOC physician.  Dkt. No. 13 at 9.

On May 1, 2018, Plaintiff showed her pictures and medical records to Dr. Patricia Jones. On May 16, 2018, Plaintiff was transferred to DCF and informed by Dr. Shepard and Defendant Larimer that Dr. Jones had found that Plaintiff did not have gender dysphoria.  Plaintiff was instead diagnosed with a personality disorder.  Therefore, Defendant Larimer told Plaintiff that her HRT would be discontinued by August 2018.  Plaintiff maintains that according to the Transgender Law Center, she meets all the criteria for gender dysphoria and gender identity disorder.  *Id.* at 9-10.

Plaintiff argues she has "felt this way" since she was ten years old, and she has socially changed her name and daily appearance to cope with her dysfunctional sex assigned at birth.  She insists that denying her HRT violates her right to treatment for her serious medical condition.  She further claims she suffers from physical and mental injures, including "back pain, breast-swelling, dreadfully dried hair, breast-dryness, breast-sagging, vomiting, chemical-hormonal imbalance, neck pain."  Her mental injuries are "depression, gender identity disorder (increased), self-hatred, suicidal thought and attempts."  *Id.* at 10-11.

**Claim Three**

Plaintiff alleges in Claim Three that on March 14, 2019, Defendants Shanna Taylor and Ernesto Martinez retaliated against her for filing grievances by holding her at DCF where there are other inmates who are paid to kill her.  These defendants also allegedly issued false misconducts and placed "separations" on Plaintiff and another DCF inmate.  *Id.* at 12.

**Claim Four**

In Claim Four Plaintiff asserts that on March 14, 2019, Defendant Martinez discriminated against her for being a part of the "LGBTQIP" community by placing "separations" on her and another inmate named Marquis Porter, because Porter is a gay male.  *Id.* at 12.

**Standard of Review**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. A party opposing a motion for summary judgment, however, may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**Eighth Amendment Claim - Medical and Mental Health Treatment (Claim Two)**

Plaintiff claims she was denied hormone replacement therapy by Dr. Sanders and Nurse Larimer. Fred Sanders, D.O., is the "qualified medical provider" at DCF. Dkt. No. 81-1 ¶ 14. Raymond Larimer, R.N., is the DCF Health Services Administrator. Dkt. No. 81-4 ¶ 1. Defendants Sanders and Larimer allege they did not deny or delay Plaintiff's access to medical or mental health treatment.

The Tenth Circuit Court of Appeals recently discussed a claim of deliberate indifference in the context of a prisoner's claim of gender dysphoria:

> Deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "Deliberate indifference involves both an objective and a subjective component." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir.

5

2000) (internal quotation marks omitted).  The objective component requires the plaintiff to show that her medical need is "sufficiently serious"; that is, "it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (internal quotation marks omitted).  We assume, without deciding, that gender dysphoria satisfies the objective component.

The subjective component requires the plaintiff to show that the prison official knew of and disregarded "an excessive risk to inmate health or safety." *Id.* (internal quotation marks omitted).  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (internal quotation marks omitted).

*Hardeman v. Smash*, No. 21-7018, 2022 WL 470741 (10th Cir. Feb. 16, 2022) (unpublished).

Causation is a necessary element of a §1983 claim of deliberate indifference.  *See Daniels v. Gilbreath*, 668 F.2d 477, 488 (10th Cir. 1982).  Not every claim of inadequate medical treatment rises to the level of a constitutional violation.  A claim of medical malpractice or negligence plainly does not equate to a constitutional violation.  *See Whitley v. Albers*, 475 U.S. 312, 319 (1986) (Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety") (citing *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976)).  Further, it is well settled that a difference of opinion as to the kind and quality of medical treatment necessary under the circumstances fails to give rise to a cause of action under § 1983.  *See McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977), *cert. denied*, 435 U.S. 917 (1978), and cases cited therein.

The record shows that DOC placed Plaintiff at DCF pursuant to an incarceration services contract between DOC and CoreCivic, Inc.  Dkt. No. 81-6 ¶ 2.  DCF follows DOC's medical and mental health policies.  Dkt. No. 81-4 ¶15.  Oklahoma DOC policy OP-140147 is titled "Management of Gender Nonconforming Inmates."  Dkt. No. 81-5.  DOC OP-140147(I)(H) of the policy defines gender dysphoria as "[a] condition where there is clinically significant discontent

or distress with one's sex assigned at birth and/or the gender roles associated with that sex." Dkt. No. 81-5 at 3.

In determining whether an inmate is gender nonconforming, OP-140147 (II) directs that the following be taken into consideration:  (A) self-identification as gender nonconforming by completion of a Self Report Form; (B) conformation of a diagnosis of gender dysphoria by a qualified mental health professional based on the diagnostic criteria of the *Diagnostic and Statistical Manual of Mental Disorders*; and (C) the inmate's appearance and/or behavior does not match the gender identity on his or her documents.  Dkt. No. 81-5 at 3-4.

DOC OP-140147(IV)(C)(1) sets forth the process to determine when hormonal treatment of an inmate with gender dysphoria may be undertaken.  Under the policy, hormonal treatment may be undertaken only after all the following occurs:  (a) diagnosis of gender dysphoria has been confirmed by a qualified mental health professional based on the diagnostic criteria of the *Diagnostic and Statistical Manual of Mental Disorders*; and (b) a Male to Female Hormonal Therapy Risk Information Form is read, signed by the inmate, and scanned into the inmate's electronic health record.  Dkt. No. 81-5 at 5.  The policy further states that:

> Once the above steps have been completed, hormonal treatment may be considered by the qualified medical provider if:
>
> (a)    Hormonal treatment was initiated prior to incarceration; or
>
> (b)    Surgical castration has occurred, verified by examination and/or medical records; or
>
> (c)    The facility medical provider determines hormone treatment is medically necessary, and approval from the Chief Medical Officer is obtained.

DOC OP-140147(IV)(C)(2) [Dkt. No. 81-5 at 5-6].

Plaintiff alleges in her Amended Complaint that on April 20, 2018, about a month before her transfer to DCF, she was returned to DCCC after having been out on a writ to the Oklahoma

County Sheriff's Office.  At that time, Plaintiff submitted a sick call request asking for a medication adjustment for a hormone replacement therapy prescription.  She was specifically advised by staff at DCCC that a doctor would need to evaluate her for gender dysphoria before she could receive a medication adjustment.

Patricia Jones, Psy.D., a psychologist for DOC, met with and evaluated Plaintiff on May 1, 2018.  Dr. Jones completed an eight-page confidential psychological report and a one-page statement of general findings on May 11, 2018.  Dkt. No. 84-1 at 21-29.  In her statement of general findings, Dr. Jones unequivocally stated the following:  "Inmate Johnson does not meet the criteria for Gender Dysphoria."  *Id*. at 21.  DOC Policy OP-140147(IV)(C) for the management of gender nonconforming inmates clearly states that unless a diagnosis of gender dysphoria is confirmed by a qualified mental health professional based on the diagnostic criteria of the *Diagnostic and Statistical Manual of Mental Disorders*, hormonal treatment may not be undertaken.  Dkt. No. 81-5 at 5.

Plaintiff was evaluated by DCF medical staff (James Sanford, R.N.), and by mental health staff (Victoria Shepherd, MEd, LDAC, LPC) upon her arrival at that facility on May 16, 2018.  Dkt. No. 81-1 ¶ 6-7; Dkt. No. 81-3 ¶ 5; Dkt. No. 81-4 ¶¶ 10, 12.  Both Mr. Larimer and Ms. Shepherd charted their evaluations of Plaintiff.  Dkt. No. 81-4 ¶¶ 10, 12; Dkt. No. 84-1 at 2-6.  Ms. Shepherd recommended that Plaintiff have an appointment with the facility psychiatrist, Dr. Lantrip, at the next available appointment.  Dkt. No. 81-3 ¶ 5; Dkt. No. 84-1 at 5.  However, when Ms. Shepherd next met with Plaintiff on May 22, 2018, Plaintiff waived receipt of any further mental health services or mental health prescribed medications.  Dkt. No. 81-3 ¶ 6; Dkt. No. 84-1 at 18-19.

On May 23, 2018, Fred Sanders, D.O., DCF medical provider, conducted a review of Plaintiff's medical chart and also staffed Plaintiff's chart with the mental health staff.  Dr. Sanders noted that the transgender/gender dysphoria diagnosis of Plaintiff had been rejected by the DOC mental health specialist conducting gender dysphoria evaluations.  Dr. Sanders also noted that the day before, Plaintiff had refused and waived all mental heath services and medications.  Dkt. No. 81-1 ¶¶ 18-21.

Defendants maintain that without confirmation of a gender dysphoria diagnosis, it would have been completely inconsistent with DOC policy and process for the management of gender nonconforming inmates for Dr. Sanders to continue to prescribe estradiol and spironolactone to Plaintiff.  In addition, there was a clear finding by Dr. Jones that Plaintiff did not meet the criteria for gender dysphoria, and there was no objective evidence in the medical record that hormonal treatment had been initiated prior to Plaintiff's incarceration.  Examination and medical records verifed that Plaintiff had not had surgical castration, and Dr. Sanders had made no determination that hormone treatment of Plaintiff was medically necessary.  Further, DOC's Chief Medical Officer had not approved of such treatment.

On May 23, 2018, Nurse Larimer and Victoria Shepherd met with Plaintiff in the DCF mental health office.  Nurse Larimer explained to Plaintiff that because Dr. Jones had not confirmed the diagnosis of gender dysphoria, Dr. Sanders would be reducing the dosage and then discontinuing the prescribed medications, estradiol and spironolactone.  Dkt. No. 81-4 ¶ 20; Dkt. No. 81-3 ¶ 14; Dkt. No. 84-1 at 38-39.

Clearly, the Eighth Amendment prohibits prison officials from acting with deliberate indifference to a prisoner's serious medical need.  *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle*, 429 U.S. at 104-06).  After careful review, this Court finds

there is no indication that Defendants Dr. Sanders or Nurse Larimer were deliberately indifferent in their approach to Plaintiff's alleged medical needs.

There was no confirmed diagnosis of gender dysphoria, which is the first step in a qualified medical providers' decision-making. If there had been a confirmed diagnosis, the medical providers could have proceeded to the next step, which would have been completion of the Male to Female Hormonal Therapy Risk and Information Form. Upon completion of Steps 1 and 2, the qualified medical provider then could proceed to Step 3, the actual consideration of prescribing hormonal treatment. However, the policy process requires the qualified medical provider to consider whether hormonal treatment had been initiated prior to incarceration, or if surgical castration had been performed, or if the facility medical provider had determined that hormonal treatment was medically necessary and had been approved by the Chief Medical Officer. Dkt. No. 81-5 at 5-6.

Because there was no confirmed diagnosis of gender dysphoria, the above analysis was not performed. Plaintiff obviously disagreed with Dr. Jones' determination in her May 11, 2018, report, which was placed in Plaintiff's electronic health record only a few days prior to Plaintiff's arrival at DCF. However, DCF understood that Dr. Jones was the qualified gender dysphoria evaluator for the DOC. Dkt. No. 81-4 ¶ 18.

Plaintiff's disagreement with Dr. Jones' report does not create a reasonable inference of deliberate indifference by Dr. Sanders or Nurse Larimer. *See Lamb v. Norwood*, 899 F.3d 1159, 1162 (10th Cir. 2018). Notably, Dr. Sanders did not abruptly discontinue the prescribed medications, instead tapering off the dosage over a period of months. Dkt. No. 8-1 ¶¶ 20-22; Dkt. No. 84-1 at 36-39.

The medical treatment that was provided to Plaintiff was different from what she wanted. While she may have benefitted from participating in counseling and other mental health services while housed at DCF, she refused and waived receipt of medical services, thereby limiting her options for treatment of her documented personality disorder. Plaintiff was, however, periodically seen by the facility psychiatrist, the facility's nurse practitioner, and other member of the facility's nursing and mental health staff. Dkt. No. 81-3 ¶¶ 16-18.

Plaintiff alleges in her Response to Defendants' Motion that she never complained about gender dysphoria to Nurse Sanford. Instead, Plaintiff put the DCF medical officers on notice that she is a transgender woman who had been diagnosed with gender dysphoria. Dkt. No. 93 at 2.

Plaintiff also reiterates in her Response to the Motion that while she was incarcerated at the Oklahoma County Jail, a psychologist diagnosed her with gender dysphoria, and she was placed on hormone therapy. After she was transferred to DOC, she continued with her hormone therapy for two years without any interruptions. While incarcerated at DCCC, Plaintiff requested an increase in her hormone therapy, and she was scheduled for an evaluation by Dr. Patricia Jones, a certified mental health professional. Dr. Jones, however, reported that Plaintiff did not have gender dysphoria. Dkt. No. 93 at 3-4. Plaintiff further alleges that after she was transferred from DCF on December 4, 2019, she was re-evaluated and determined to have gender dysphoria. *Id.* at 1-2, 6.

Plaintiff apparently is arguing that DCF should have accepted her previous diagnosis of gender dysphoria from the Oklahoma County Jail. However, after she was received by the DOC, she was subject to its policies and procedures for such diagnoses.

After careful review, the Court finds there are no genuine issues of material fact with regard to whether Defendants Sanders and Larimer were deliberately indifferent to Plaintiff's serious

medical need regarding her alleged gender dysphoria.  Accordingly, Defendants Sanders and Larimer's motion for summary judgment for Ground Two of the Amended Complaint [Dkt. No. 81] is granted.

**Exhaustion of Administrative Remedies (Grounds One, Three, and Four)**

Defendants' Motion also alleges that Plaintiff failed to exhaust the administrative remedies for her claims of denial of due process, retaliation, and discrimination in Claims One, Three, and Four before raising the claims in this civil rights action.  Her allegedly unexhausted claims are:

**Ground One:**  She was denied due process in violation of the Fourteenth Amendment when three items of cosmetics were seized by facility staff upon her arrival at DCF.

**Ground Three:**  She was subjected to retaliation by Defendants Shanna Taylor and Ernesto Martinez in violation of the First Amendment after she filed grievances.

**Ground Four:**  She was denied equal protection by certain facility staff by the placement of separations on her and another inmate in violation of the Fourteenth Amendment because Plaintiff is LGBTQIP.

Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001).  "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust her administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted).

According to DCF Grievance Coordinator Terry Underwood, by contract, DCF utilizes the Oklahoma DOC Offender Grievance Process, OP-090124.  Dkt. No. 81-10 ¶¶ 4-5; Dkt. No. 81-

11.  Under the Offender Grievance Process, an inmate first must attempt to resolve her complaint informally by communicating with staff within three days of the incident.  If that is unsuccessful, she may submit a Request to Staff (RTS) within seven calendar days of the incident, alleging only one issue per form.  If the offender does not receive a response to her RTS within 30 calendar days of submission, she may submit a grievance to the Review Authority, asserting only the issue of the lack of response to the RTS.  If the complaint is not resolved after the response to the RTS, the offender then may file a grievance.  If the grievance also does not resolve the issue, the inmate may appeal to the Administrative Review Authority or the Chief Medical Officer.  The administrative process is exhausted only after all of these steps have been taken.  Dkt. No. 81-10 ¶ 5; Dkt. No. 81-11  at 7-16.

Ms. Underwood maintains the DCF grievance records.  She states by affidavit that she has reviewed the administrative remedies records submitted by Plaintiff during her incarceration at that facility.  Dkt. No. 81-10 ¶ 7.  Ms. Underwood asserts that Plaintiff's submissions frequently contained procedural defects.  Dkt. No. 81-10 at ¶¶ 8-18.  The grievance policy clearly states that if instructions are not followed, submitted grievances may not be answered.  Dkt. No. 81-11.

Plaintiff submitted an RTS on or about May 22, 2018, to Defendant Ray Larimer, Health Services Administrator, asking that undergarments and cosmetics be approved.  Nurse Larimer's June 4, 2018, response denied the request, because Plaintiff had not been approved to have the items.  On June 22, 2018, Plaintiff submitted Grievance No. 2018-160, requesting that she be reimbursed for the value of the items.  The grievance was returned to Plaintiff unanswered on June 26, 2018, with a memorandum specifically advising that property issues are not grievable to DOC and that Plaintiff must use the property claim process in CoreCivic Policy 14-6.  Plaintiff next submitted an appeal of the grievance response to the DOC ARA, which was returned unanswered

on July 24, 2018, with a notation that it was received out of time.  No issue was properly exhausted. Dkt. No. 81-10 ¶ 8; Dkt. No. 31-8 at 2-9.

Sgt. Mary Morrison, DCF Property Officer, has submitted an affidavit stating that Policy 14-6 of the property claim process is the method to exhaust a claim concerning property.  As Property Officer, Sgt. Morrison logs and processes property claims filed by inmates.  According to Sgt. Morrison, she reviewed the facility's property claims, and Plaintiff did not file a 14-6 property claim concerning her three cosmetic items.  Dkt. No. 81-6 at ¶ 12.  Plaintiff claims she was not advised of the procedure for property claims and had no way to find out about it [Dkt. No. 93 at 32], however, she was advised of the policy in her returned grievance [Dkt. No. 31-8 at 4]. Therefore, Plaintiff did not exhaust Claim One.

Regarding Claims Three and Four, Grievance Coordinator Underwood states in her affidavit that Plaintiff did not submit any grievance asserting a claim of retaliation by false misconducts and separations by Unit Manager Martinez or Case Manager Taylor, or a claim of discrimination against Martinez regarding Inmate Porter.  Dkt. No. 81-10 ¶ 20.  Plaintiff contends in her Response to the Motion she filed an RTS that was not answered.  She, however, apparently did not follow the procedure for an unanswered RTS.  Dkt. No. 81-11 at 9.  Therefore, Claims Three and Four are unexhausted.

Defendants maintain that Plaintiff had access to the grievance process and the property claim process.  The necessary forms were available, however, most of Plaintiff's filings were not made properly or not made at all.  Plaintiff alleges in her response to the motion that "Defendant's Interpretation of PLRA violates the U.S. Constitution of Plaintiffs First, Fifth and Fourteenth amendment rights of access to courts and Equal Protection, awarding them summary judgement

would insult the Supreme Law of land and make PLRA unconstitutional." Dkt. No. 93 at 35 (spelling and syntax in original).

After careful consideration of the pleadings and other submitted materials in this case, the Court is of the view that there are no genuine issues of material fact concerning whether Plaintiff's claims in Grounds One, Three, and Four are unexhausted. Summary judgment is GRANTED for these claims.

THEREFORE, Defendants' motion for summary judgment [Dkt. No. 81] is GRANTED.

IT IS SO ORDERED this 8th day of April 2021.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

LAMONE MORLEE JOHNSON,

        **Plaintiff,**

v.                                                                   **Case No. 19-CV-269-JFH-JAR**

DR. SANDERS, et al.,

        **Defendants.**

### <u>OPINION AND ORDER</u>

Plaintiff Lamone Morlee Johnson ("Johnson"), a transgender woman, filed an amended civil rights complaint pursuant to 42 U.S.C. § 1983, claiming she was unconstitutionally denied hormone replacement therapy ("HRT").  Dkt. No. 13.  The defendants are the following Davis Correctional Facility ("DCF") officials:  Dr. Sanders; Ray Larimer, Health Services Administrator; Ernesto Martinez, Case Manager; Shanna Taylor, Case Manager; and Sgt. Morrison, Correctional Officer.  On April 8, 2022, this Court granted the defendants' motion for summary judgment and entered judgment for the defendants.  Dkt. Nos. 98, 99.  On April 25, 2022, Plaintiff Johnson filed a motion to alter or amend the judgment, pursuant to Fed. R. Civ. P. 59(e).  Dkt. No. 100.  Although Johnson's prolix motion is difficult to follow, Johnson is arguing that the Court's duty was "to determine whether or not the O.D.O.C. Policy [on management of gender nonconforming inmates] is unconstitutional or not."  *Id*. at 2.

As discussed in this Court's earlier Opinion and Order, before her sentencing, Johnson received HRT and a testosterone blocker at the Oklahoma County Sheriff's Office.  *Id*. at 3.  In September 2016, she was assessed at the Oklahoma Department of Corrections' ("ODOC") Lexington Assessment and Reception Center, and the HRT was continued.  *Id*.  She was transferred to North Folk Correctional Center, where she allegedly signed an agreement to continue her HRT.

*Id.* When she was transferred to John H. Lilley Correctional Center and Dick Connor Correctional Center, she allegedly was promised in an agreement with ODOC that she would be monitored to determine whether she was benefitting from the treatment. *Id.*

On April 20, 2018, Johnson returned from a writ to the Oklahoma County Sheriff's Office, and she obtained a copy of her medical records, which indicated a change in her HRT dosage. Dkt. No. 13 at 9. In response, she submitted a sick call request and was informed that before her medication could be adjusted, she needed a gender dysphoria evaluation by an ODOC physician. *Id.* Johnson argued that she already had been evaluated by the Oklahoma County Sheriff's Department before entering ODOC custody, but prison officials maintained she had to have an ODOC evaluation. *Id.*

On May 1, 2018, Dr. Patricia Jones, ODOC staff psychologist, evaluated Johnson by interviewing her about her family, social and transgender history; her education and employment history; her social and relational history; her criminal history; and her psychiatric and substance abuse history. Dkt. No. 13-2 at 24-28. Dr. Jones also considered all of Johnson's ODOC electronic medical records, administered a mental status examination, reviewed relevant self-report assessments, and observed Johnson's social media posts. *Id.* at 25. In addition, Dr. Jones conducted a field file review and a comprehensive review of Johnson's Offender Management System records. *Id.* at 28-30. Dr. Jones concluded that "while Inmate Johnson may, or may not, be a transgendered individual, her anger, anxiety, reported episodes of depression, substance use, and extreme difficulty in social situations are best explained by Personality Disorder and not Gender Dysphoria. *Id.* at 24.

After Dr. Jones issued her report on May 11, 2018, Johnson was transferred to Davis Correctional Facility ("DCF") on May 16, 2018. *Id*. at 9-10. At DCF, Johnson was informed that Dr. Jones had advised that Johnson did not have gender dysphoria. *Id*. at 10. Instead, Dr. Jones had diagnosed Johnson with a personality disorder. *Id*. at 10; Dkt. No. 13-2 at 23-31.

Johnson argues in her Rule 59(e) motion that the Dr. Jones was not competent to distinguish between gender dysphoria and other mental health conditions. Dkt. No. 100 at 3. She also insists that ODOC should not have required the gender dysphoria evaluation by Dr. Jones, because Johnson previously was evaluated at the Oklahoma County Jail. *Id*. at 6. Johnson advises she has more recently been re-evaluated for gender dysphoria, and she was diagnosed with a "severe case of gender dysphoria" and prescribed HRT. *Id.* at 2-3.

Johnson contends the Court's citation to *Hardeman v. Smash*, No. 21-7018, 2022 WL 470741 (Feb. 16, 2022) in its April 8, 2022, Opinion and Order was inappropriate, because the plaintiff in that case never was on HRT. *Id*. at 2. The Court notes that it did not reference *Hardeman v. Smash*. It did, however, reference *Hardeman v. Smith*, 764 F. App'x 658 at n.1 (10th Cir. Feb. 22, 2019), but only with respect to Johnson's preferred pronouns. Dkt. No. 98 at 1 n.1.

Johnson cites *Porter v. Crow*, No. 18-CV-472-CVE-CDL, 2020 WL 620284 (N.D. Okla. Feb. 10, 2020), as controlling. Dkt. No. 100 at 2. Johnson asserts that *Porter* shows that Dr. Patricia Jones, the ODOC staff psychologist, is a "biased bigot psychologist" who no longer is employed by the Department of Corrections. Dkt. No. 100 at 2. The Court notes that Dr. Jones is not a defendant in this action.

In the *Porter* case, Dr. Jones evaluated Porter, a transgender female inmate, and suggested that Porter was "masquerading as a woman." *Porter*, 2020 WL 620284, at *3. Based on her 45-

After Dr. Jones issued her report on May 11, 2018, Johnson was transferred to Davis Correctional Facility ("DCF") on May 16, 2018. *Id*. at 9-10.  At DCF, Johnson was informed that Dr. Jones had advised that Johnson did not have gender dysphoria. *Id*. at 10.  Instead, Dr. Jones had diagnosed Johnson with a personality disorder. *Id*. at 10; Dkt. No. 13-2 at 23-31.

Johnson argues in her Rule 59(e) motion that the Dr. Jones was not competent to distinguish between gender dysphoria and other mental health conditions. Dkt. No. 100 at 3.  She also insists that ODOC should not have required the gender dysphoria evaluation by Dr. Jones, because Johnson previously was evaluated at the Oklahoma County Jail. *Id*. at 6.  Johnson advises she has more recently been re-evaluated for gender dysphoria, and she was diagnosed with a "severe case of gender dysphoria" and prescribed HRT. *Id.* at 2-3.

Johnson contends the Court's citation to *Hardeman v. Smash*, No. 21-7018, 2022 WL 470741 (Feb. 16, 2022) in its April 8, 2022, Opinion and Order was inappropriate, because the plaintiff in that case never was on HRT. *Id*. at 2.  The Court notes that it did not reference *Hardeman v. Smash*.  It did, however, reference *Hardeman v. Smith*, 764 F. App'x 658 at n.1 (10th Cir. Feb. 22, 2019), but only with respect to Johnson's preferred pronouns. Dkt. No. 98 at 1 n.1.

Johnson cites *Porter v. Crow*, No. 18-CV-472-CVE-CDL, 2020 WL 620284 (N.D. Okla. Feb. 10, 2020), as controlling.  Dkt. No. 100 at 2.  Johnson asserts that *Porter* shows that Dr. Patricia Jones, the ODOC staff psychologist, is a "biased bigot psychologist" who no longer is employed by the Department of Corrections. Dkt. No. 100 at 2.  The Court notes that Dr. Jones is not a defendant in this action.

In the *Porter* case, Dr. Jones evaluated Porter, a transgender female inmate, and suggested that Porter was "masquerading as a woman." *Porter*, 2020 WL 620284, at *3.  Based on her 45-

3

minute session with Porter, Dr. Jones issued a report, "concluding that Plaintiff's anxiety, depression, and difficulty in social settings was better explained by her diagnosis of schizotypal personality disorder, not gender dysphoria." *Id.*

> Dr. Jones "based her conclusion that Plaintiff did not suffer from [g]ender [d]ysphoria on assumptions including Plaintiff's choice of careers and interests" which include a past career as a heavy equipment operator and an interest in nuclear science and biochemistry. Jones characterized these as "typically male dominated areas of interest, education, and employment." *Id*. Jones' assessment was improperly influenced by the biased opinion that women generally do not operate heavy equipment and do not study science, an opinion not grounded in "any fact or statistic."

*Id.* (citations omitted).

> In her report [for Porter], Dr. Jones recommended mental health treatment for schizotypal personality disorder and stated, "When medical staff determines if continuation, advancement, or discontinuation of [hormone therapy] is in the best interest of [Plaintiff], it is recommended that medical and mental health staff meet to consult on development of a formal behavior plan that will provide appropriate safety precautions . . . ."

*Id*. at *4.

Dr. Jones did not recommend that Porter's HRT be discontinued.  She instead recommended that when a decision about HRT was made by medical staff, the medical and mental health staff should confer to develop a plan for Porter. *Id*.  Sometime after Porter's meeting with Dr. Jones, a physician's assistant at the prison allegedly abruptly discontinued Porter's HRT. *Id*.  Porter claimed the sudden end of the HRT caused her to experience severe physical and mental problems. *Id*.  Porter's subsequent grievance and grievance appeal seeking reinstatement of her treatment was denied, based on Dr. Jones's report. *Id.*

The Northern District Court held that Porter "suffer[ed] from a serious medical condition, 'to which ODOC and its officials, employees, and agents are and have been deliberately

4

indifferent.'" *Id.* (quoting Porter's amended complaint at 9).  Based on the Court's analysis, Porter was permitted to proceed against Dr. Jones on Porter's deliberate-indifference claim.  *Porter*, 2020 WL 620284, at *14.

According to the docket sheet for Porter's Northern District Case No. 18-CV-472-CVE-CDL, on June 7, 2021, mail addressed to her was returned to the Court, marked "address unknown."  On August 24, 2021, a Suggestion of Death as to Porter was filed by Porter's attorney.  On November 8, 2021, all claims against the defendants were dismissed with prejudice and Judgment was entered against Porter.  Consequently, the *Porter* case is not authority for Johnson's case.

Johnson next alleges that the ODOC's policy on management of inmates with gender dysphoria states that HRT may not be undertaken unless a diagnosis of gender dysphoria is determined.  She argues this requirement is "irrelevant" to the issue when she already had been prescribed HRT.  Also, the policy does not expressly state that the ODOC or private prison staff may discontinue HRT if a misdiagnosis is made.   When Johnson waived her psychiatric medications, she did not waive her HRT chronic case medications.

Johnson further asserts that the Court's statement "that there was no evidence in the medical record that the Plaintiff's HRT was initiated prior to incarceration of [sic] O.D.O.C. is a lie."  Dkt. No. 100 at 5.  The Court does not find this language in its Opinion and Order, and Johnson's citations are to her own exhibits.  The record shows that the Court clearly acknowledged Johnson's history of HRT in the Opinion and Order entered on April 8, 2022.  Dkt. No. 98 at 3.

Johnson points to her medical summary showing an entry reading, "Pt. has been on hormone replacement therapy for over a year and feels he is a woman trapped in a man's body."

Dkt. No. 13-1 at 30.  The form was electronically signed by Bethanie Allie, LPN, on January 4, 2018, before Dr. Jones evaluated Johnson on May 1, 2018.  *Id*. at 33.  Johnson contends the defendants should have reviewed her previous medical records, so they would have known of the HRT prior to incarceration in the ODOC.  It, however, is clear from the medical summary form that prison officials were aware of Johnson's history.

After careful review, the Court finds Johnson has failed to show she is entitled to relief for her motion to alter or amend the Judgment in this case.

IT IS THEREFORE ORDERED that Johnson's motion to alter or amend the Judgment pursuant to Rule 59(e) [Dkt. No. 100] is denied.

Dated this 9th day of May 2023.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE