Appellate Case No. 23-7031

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

### LAMONE M. JOHNSON
### Plaintiff-Appellant

### v.

### DR. SANDERS, et al.,
### Defendants-Appellees

**Appeal from United States District Court for the Eastern District of Oklahoma of Order dated May 9, 2023 Granting Defendants' Motion For Summary Judgment.**

**Order entered by the United States District Judge John F. Heil, III Case No. CIV-19-269-JFH-JAR**

### DEFENDANTS-APPELLEES'
### SUPPLEMENTAL ANSWER BRIEF

**NO ORAL ARGUMENT REQUESTED**
**BY DEFENDANTS-APPELLEES**
By: DARRELL L. MOORE, OBA 6332
COURT PLACE AT NORTH VANN
P.O. BOX 368
PRYOR, OK 74362
(918) 825-0332
darrellmoore@jralphmoorepc.com


ATTORNEY FOR DEFENDANTS-APPELLEES - Sanders, Larimer, Martinez, Morrison and Taylor

## DEFENDANTS-APPELLEES'
## SUPPLEMENTAL ANSWER BRIEF

**CERTIFICATE OF COUNSEL**....................................................3

**STATEMENT OF THE CASE**.................................................3

**STATEMENT OF THE ISSUE**................................................12

**STANDARD OF REVIEW**....................................................12

**ARGUMENT AND AUTHORITIES**....................................13

**PROPOSITION: THE DISTRICT COURT DID NOT ERR. DR. SANDERS AND NURSE LARIMER WERE ENTITLED TO SUMMARY JUDGMENT**

**CONCLUSION**.........................................................................22

**NECESSITY OF ORAL ARGUMENT**.................................22

**CERTIFICATE OF COMPLIANCE**....................................23

**CERTIFICATE OF DELIVERY**............................................24

**Prior / Related Appeals:**

Counsel is unaware of any other prior or related appeals.

i

# TABLE OF AUTHORITIES

**Rules**

Fed. R. App. P. 32(a)(7)(C) ………………………………………………… 23

Fed. R. App. P. 34(a)………………………………………………………… 22

Tenth Cir.R. 34.1……………………………………………………………... 22

Fed.R.Civ.P. 56(a) …………………………………………………………12

Fed.R.Civ.P. 56(c) …………………………………………………………13

**Cases**

Al-Turki v. Robinson, 762 F.3d 1188, 1192 (10th Cir. 2014 …………………..2

Ciempa v. Ward, 150 Fed. Appx. 905, 907 (10th Cir. 2005) …………………13

Crowson v. Washington County Utah, 983 F.3d 1166,
1179-1180 (10th Cir. 2020)…………………………………………………… 21

Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197,
167 L.Ed.2d 1081 (2007) (per curiam) …….…………………………………12

Estelle v. Gamble, 429 U.S., 97, 104 (1976) .…………………………………14

Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir.1999)………………………..12

Loard v. Sorenson, 561 Fed. Appx. 703, 705 (10th Cir. 2014)………………..12

Sealock v. Colorado, 218 F.3d 1205, 1211 (10th Cir. 2000) …………………..24

Sparks v. Singh, 690 F. App'x 598 (10th Cir. 2017).…………………………..18

Supre v. Ricketts, 792 F.2d 958, 963 (10th Cir. 1986)…………………………20

Yousuf v. Cohlmia, 741 F.3d 31, 37 (10th Cir.2014)………………………….12

Whitley v. Albers, 475 U.S. 312, 319 (1986) …………………….....………….14

# UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

**LAMONE M. JOHNSON,**

      **Plaintiff-Appellant,**

**vs.**

**Case No. 23-7031**

**DR. SANDERS, et. al.,**

      **Defendants-Appellees.**

---

## DEFENDANTS-APPELLEES'
## SUPPLEMENTAL ANSWER BRIEF.

---

COME NOW Defendants-Appellees Sanders, Larimer, Martinez, Morrison, and Taylor (hereinafter "Defendants-Appellees") by and through their attorney of record, Darrell L. Moore, OBA #6332, submitting their supplemental Answer Brief in response and opposition to the supplemental opening Brief of Plaintiff-Appellant.

On page 19 of Document 010111028258, n.5, (Appellant's supplemental opening brief), Appellant states she appeals only the District Court's entry of summary judgment on the deliberate-indifference claim. Appellant accepts that the District Court was correct in determining that all other claims raised by Appellant below had not been exhausted under the Prison Litigation Reform Act and summary judgment was appropriately entered in favor of Appellees.

The District Court did not err in granting the Appellees' Motion for Summary

Judgment as regards Appellant's deliberate-indifference claim. Appellant Johnson was in the custody of the Oklahoma Department of Corrections. Approximately two weeks before Johnson was transferred by the Oklahoma Department of Corrections to the Davis Correctional Facility, Johnson was assessed by Dr. Patricia Jones, Psy.D, Staff Psychologist, at the request of Janna Morgan, Ph.D, Chief Mental Health Officer of the Oklahoma Department of Corrections. The purpose of the evaluation was to document the presence or absence of the diagnostic criteria for Gender Dysphoria per the DSM-5, as well as any additional information relevant to the question of if it was in the best interest of the inmate's psychological health to provide hormone therapy. Dr. Jones prepared a report following her assessment and found that Johnson did <u>not</u> meet the criteria for Gender Dysphoria. Dr. Jones believed a documented *personality disorder* was the primary factor fueling Johnson's dysphoric mood. Dr. Jones' report was made a part of Johnson's Oklahoma DOC medical records file.

Appellant Johnson was transferred by Oklahoma Department of Corrections from the Dick Conner Correctional Center to the Davis Correctional Facility on May 16, 2018. The Davis Correctional Facility was owned and operated by CoreCivic, Inc. Appellant Johnson's placement at the Davis facility was pursuant to an incarceration services contract between CoreCivic, Inc., and Oklahoma Department of Corrections. Appellee Sanders was the Davis facility medical doctor. Appellee

Larimer, a registered nurse, was the Davis facility health services administrator. As was clearly set forth in Appellees' Motion and outlined in detail by the District Court in its Orders, Appellees Sanders and Larimer were not deliberately indifferent to Appellant's medical needs.

Simply put, there was no error below. This Honorable Court should affirm the decisions of the United States District Court for the Eastern District of Oklahoma.

## CERTIFICATE OF COUNSEL

In accordance with Tenth Cir.R.31.3, counsel for Appellees certifies that he is filing a supplemental joint answer brief on behalf of all Appellees.

## <u>STATEMENT OF THE CASE</u>

1.     On March 26, 2018, while Appellant Johnson was housed by Oklahoma DOC at the Dick Conner Correctional Center, Bethany Wagener, PA-C, charted an electronic health record (EHR) message to Dr. Morgan and Dr. Jones, as follows: *I just saw Johnson (744047) whom claims Dr. Jones DID see her and DID indicate she has GD and that is why Dr. Moore initiated Estrogen…None of this in the chart however.. (except the order for Estrogen/Aldactone). I am just going to chart and co-sign you and Dr. Jones with these patients and will not adjust any meds or order any undergarments until a note from Dr. Jones is in pt's charts. See* ROA Vol III., Doc# 010110881267 Pg. 43.

2.     On April 22, 2018, Appellant Johnson submitted a Request for Health

Services. The "reason for service" stated by Appellant Johnson in the submitted Request was as follows: *I need my medication estradiol & spironolactone adjusted to estradiol 2mg to 4mg and spironolactone 50mg to 200mg, from Oklahoma County Sheriff's Office*. The Request was responded to on April 25, 2018. Appellant Johnson was told as follows: *You have been scheduled to discuss with the provider 4-26-18*. *See* ROA Vol I., Doc#01011088265 Pg. 118.

3.      On April 24, 2018, an EHR message from Dr. Jones was charted, as follows: *Just FYI – although this inmate Lamone Johnson is on my list, I have NOT evaluated Lamone Johnson at this time. This inmate has not even been seen by me for a preliminary evaluation. The statement by Lamone Johnson that I have seen Lamone Johnson is untrue. See* ROA Vol III., Doc# 010110881267 Pg. 43.

4.      On April 26, 2018, Bethany Wagener, PA-C authorizing provider at Dick Conner Correctional Center, charted a Progress Note in Appellant Johnson's medical record, identifying Johnson's *problems* as follows: Esophageal Reflux, confirmed, 01/04/2018; Asthma NOS, status confirmed, 04/30/2017; Mood Disorder NOS, status suspected, 09/28/2016; Posttraumatic Stress Disorder, status suspected 09/23/2016; Bipolar I Disorder, most recent episode depressed, mild, status suspected, 09/23/2016; and Gender Identity Disorder in Adolescents or Adults, status suspected, 09/23/2016. *See* ROA Vol III., Doc# 010110881267 Pg. 43.

5.      On May 1, 2018, Patricia L. Jones, Psy.D. Staff Psychologist, completed

an evaluation of Johnson. *See* ROA Vol III., Doc# 010110881267 Pgs. 44-51.

6.　　The stated purpose of the evaluation of Johnson was as follows: *Janna Morgan, Ph.D., Chief Mental Health Officer of the Oklahoma Department of Corrections referred this case in April 2018. The purpose of the evaluation was to document the presence or absence of the diagnostic criteria for Gender Dysphoria per the DSM-5, as well as any additional information relevant to the question of if it is in the best interest of the inmate's psychological health to provide hormone therapy. See* ROA Vol III., Doc# 010110881267 Pg. 44.

7.　　Dr. Jones prepared an eight-page Psychological Report detailing her evaluation of Lamone Johnson. The report was incorporated into Johnson's Oklahoma DOC electronic health record. *See* ROA Vol III., Doc# 010110881267 Pgs. 44-51.

8.　　Dr. Jones' general finding in the Psychological Report was that Lamone Johnson does not meet the criteria for Gender Dysphoria. *See* ROA Vol III., Doc# 010110881267 Pgs. 44-51.

9.　　A medical transfer summary was completed regarding Lamone Johnson on May 14, 2018. The transfer summary stated that Appellant Johnson was being transferred from the Dick Conner Correctional Center to the Davis Correctional Facility. The medical transfer summary was prepared by Jane Little, R.N. *See* ROA Vol III., Doc# 010110881267 Pgs. 52-54.

10.     The medical transfer summary listed a diagnosis of Personality Disorder NOS as having been *confirmed* on May 11, 2018. *See* ROA Vol III., Doc# 010110881267 Pgs. 52.

11.     The medical transfer summary listed a diagnosis of gender identity disorder had been *rejected*, per Dr. Jones, and that Appellant's dysphoric mood was related to personality disorder and malingering for secondary gain. *See* ROA Vol III., Doc# 010110881267 Pgs. 53.

12.     The medical transfer summary listed medications and included Estradiol 2mg tablet, oral, 1 tablet before bed, with a start date of March 3, 2018. *See* ROA Vol III., Doc# 010110881267 Pgs. 53.

13.     The medical transfer summary cleared Appellant Johnson for transport by the Central Transport Unit, without restrictions, and with regards to "current health summary" stated as follows: *FYI: Gender Identity Disorder, on hormone replacement therapy*. *See* ROA Vol III., Doc# 010110881267 Pgs. 54.

14.     On May 16, 2018, Appellant Johnson was transferred by Oklahoma DOC from the Dick Conner Correctional Center to the Davis Correctional Facility. Upon arrival, Victoria Shepherd, MEd, LPC, LADC met with Appellant. *See* ROA Vol III., Doc# 010110881267 Pgs. 167.

15.     On May 16, 2018, Ms. Shepherd completed a comprehensive mental health intake evaluation of Appellant. On the comprehensive mental health

evaluation form, she noted the *diagnosis* of Personality Disorder NOS. *See* ROA Vol III., Doc# 010110881267 Pgs. 168.

16. On May 17, 2018, a new intake medical physical evaluation of Appellant Johnson was completed by Sue Burkhalter, NP. *See* ROA Vol III., Doc# 010110881267 Pgs. 57-64.

17. On May 22, 2018, Appellant Johnson met again with Victoria Shepherd. Ms. Shepherd charted that Appellant Johnson stated he no longer felt he was in need of mental health services. Ms. Shepherd noted as follows: *He was educated on the potential negative consequences to discontinuing mental health services but continued to request a waiver of treatment. He denies any thoughts, plan, or intent to cause harm to himself or anyone else at present. He is agreeable to submitting a sick call request should he feel that he is in need of services again in the future. At this time, it appears that his mental status is within normal limits. See* ROA Vol III., Doc# 010110881267 Pg. 180.

18. Appellant Johnson signed a waiver of treatment/evaluation form on May 22, 2018. The facility psychiatrist, Linda Lantrip, D.O., discontinued the prescribed medication Remeron. *See* ROA Vol III., Doc# 010110881267 Pgs. 181-182.

19. The Oklahoma Department of Corrections policy for the Management of Gender Nonconforming Inmates is policy OP-140147. *See* ROA Vol II., Doc# 010110881266 Pgs. 60-66.

20.     According to OP-140147, hormonal treatment of inmates with Gender Dysphoria may be undertaken only after all the following occurs: (a) Diagnosis of Gender Dysphoria has been confirmed by a qualified mental health professional based on the diagnostic criteria of the Diagnostic and Statistical Manual of Mental Disorders; (b) A "Female to Male Hormonal Therapy Risk and Information Form or Male to Female Hormonal Therapy Risk and Information Form is read, signed by the inmate and scanned into the inmate's electronic health record. *See* ROA Vol II., Doc# 010110881266 Pg. 63.

21.     Fred Sanders, D.O., was the qualified medical provider at Davis Correctional Facility during the time of Appellant Johnson's incarceration at that facility. *See* ROA Vol II., Doc# 010110881266 Pg. 40, ⁋5.

22.     On May 23, 2018, Dr. Sanders reviewed Dr. Patricia Jones' eight-page comprehensive report and her one-page statement of general findings regarding Appellant Johnson. Dr. Sanders also reviewed Appellant Johnson's chart and he staffed the matter with the facility's mental health team and the facility's health services administrator. *See* ROA Vol II., Doc# 010110881266 Pg. 40, ⁋18.

23.     Because a diagnosis of gender dysphoria had been *rejected* by Dr. Patricia Jones, Oklahoma DOC staff psychologist, on May 11, 2018, Dr. Sanders' opinion was that the prescribed Estradiol and Spironolactone for Appellant Johnson would need to be discontinued to maintain compliance with DOC policy OP-140147.

*See* ROA Vol II., Doc# 010110881266 Pg. 40, ⁋19; *see also* Dr. Sanders' medical chart note of May 23, 2018, ROA Vol III., Doc# 010110881267 Pgs. 198-199.

24.    To reduce unwanted side effects from discontinuing the two medications, Dr. Sanders charted he proposed to decrease the Spironolactone from 50mg to 25mg and continue for at least 6 months and to decrease the Estradiol from 2mg/day to 1mg/day for 3 months and to then discontinue. *See* ROA Vol II., Doc# 010110881266 Pg. 40, ⁋20; *see also* Dr. Sanders' medical chart note of May 23, 2018, ROA Vol III., Doc# 010110881267 Pgs. 198-199.

25.    Ms. Shepherd and Health Services Administrator Larimer met with Appellant Johnson in the mental health office on the afternoon of May 23, 2018. Appellant Johnson was told that the facility's medical provider (Dr. Sanders) and the mental health provider (Dr. Lantrip) had concluded that the previously prescribed hormonal therapy would be reduced and eventually discontinued because Dr. Patricia Jones had determined Appellant Johnson did *not* meet the criteria for gender dysphoria. *See* ROA Vol III., Doc# 010110881267 Pg. 200.

26.    Appellant Johnson submitted a Request to Staff dated October 6, 2018. The action requested was to have the Estradiol re-instated and the Aldactone increased in dosage. The Request to Staff was answered on October 15, 2018, noting that the action requested had been previously addressed. Appellant was advised "if you have medical issues that need evaluated submit a request for health services."

*See* ROA Vol I., Doc# 010110881265 Pg. 352.

27.     Appellant Johnson submitted a request for health services dated March 31, 2019. Appellant stated, "I am in pain, my back, breast, neck is hurting." The request was answered on April 2, 2019, noting that Appellant Johnson had refused Ibuprofen and Tylenol. *See* ROA Vol I., Doc# 010110881265 Pg. 363.

28.     Appellant Johnson submitted a Request to Staff dated June 13, 2019. The action requested was to have the Estradiol and Spironolactone re-instated. The Request to Staff was answered on June 20, 2019, noting that during the psychologist evaluation Appellant Johnson did not meet the criteria for therapy. *See* ROA Vol I., Doc# 010110881265 Pg. 354.

29.     Appellant Johnson submitted an Inmate/Offender Grievance dated July 3, 2019. The action requested was to reinstate the Estradiol and Spironolactone and to re-diagnose Johnson with correct criteria. *See* ROA Vol I., Doc# 010110881265 Pg. 356.

30.     The submitted Grievance and requested relief was denied on July 16, 2019, because Appellant Johnson had been evaluated by a psychologist and did not meet the criteria for therapy. *See* ROA Vol I., Doc# 010110881265 Pg. 358.

31.     Appellant Johnson filed an appeal of the denied grievance relief to the Oklahoma DOC Administrative Review Authority on July 31, 2019. *See* ROA Vol I., Doc# 010110881265 Pg. 359-360.

32.    On September 4, 2019, the Medical Services Manager for Oklahoma DOC responded to the grievance appeal, as follows: *According to your record, a Qualified Mental Health Professional (QMPH) completed a Gender Dysphoria Forensic Mental Health Assessment report on May 11, 2018 and concluded you do not have a current diagnosis of Gender Dysphoria. Therefore, your request to reinstate your hormone replacement therapy (HRT) is denied. If you need further assistance with any medical or mental health concerns/treatments, you must submit a "Request for Heath Services" form (attached) to the medical unit at your facility, via the sick call process. See* ROA Vol I., Doc# 010110881265 Pg. 361.

33.    Appellees filed a Motion for Summary Judgment on April 2, 2021. *See* ROA Vol II., Doc# 010110881266, Brief at Pgs. 12-37, Exhibits 1-12 at Pgs. 38-140.

34.    Appellant responded to Appellees' Motion for Summary Judgment on July 19, 2021. *See* ROA Vol II., Doc# 010110881266, Pgs. 141-176, Exhibits Pgs. 177-437.

35.    On April 8, 2022, the District Court entered an Opinion and Order granting the Appellees' Motion for Summary Judgment and entered Judgment in favor of Appellees. *See* ROA Vol. II., Doc# 010110881266, Pgs. 438-453.

36.    On April 25, 2022, Appellant filed a Motion to Amend or Alter the District Court's Judgment. *See* ROA Vol. II., Doc# 010110881266, Pgs. 454-462.

37.    On May 9, 2023, the District Court entered an Opinion and Order

denying the motion to alter or amend the earlier entered Judgment. *See* ROA Vol. II., Doc# 010110881266, Pgs. 480-485.

38.     It is from these Orders that Appellant proceeds.

## STATEMENT OF ISSUE

1.     Whether the District Court erred by granting Appellees' Motion for Summary Judgment.

## STANDARD OF REVIEW

The United States District Court for the Eastern District of Oklahoma granted Appellees' Motion for Summary Judgment.

The United States Court of Appeals for the Tenth Circuit reviews a grant of summary judgment *de novo*, drawing all reasonable inferences and resolving all factual disputes in favor of the non-moving party. *See* Yousuf v. Cohlmia, 741 F.3d 31, 37 (10th Cir.2014).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Because Plaintiff-Appellant was proceeding *pro se*, the Court must construe those filings liberally. *See* Loard v. Sorenson, 561 Fed. Appx. 703, 705 (10th Cir. 2014); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) (*per curiam*).

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the Court examines the factual record in the light most favorable to the nonmoving party. *See* <u>Ciempa v. Ward</u>, 150 Fed. Appx. 905, 907 (10th Cir. 2005).

## ARGUMENT AND AUTHORITIES

### <u>PROPOSITION</u>:

### THE DISTRICT COURT DID NOT ERR. DR. SANDERS AND NURSE LARIMER WERE ENTITLED TO SUMMARY JUDGMENT.

Dr. Fred Sanders was the 'qualified medical provider' at Davis Correctional Facility when Appellant was at that prison. Ray Larimer, R.N., was the Health Services Administrator at the prison facility.

In its Opinion and Orders, the District Court clearly restated Appellant's history, both mental and medical, and discussed Appellant's allegations directed at Dr. Jones (i.e., Patricia Jones, Psy.D., <u>the</u> evaluator for Oklahoma Department of Corrections, and not a party to this action). A copy of Dr. Jones' report was included by Appellees to their Motion for Summary Judgment and by Appellant to her response to Appellees' Motion for Summary Judgment. *See* ROA Vol II. DOC# 010110881266 Pgs. 226-234.

As is well known to this Honorable Court, an Eighth Amendment violation occurs when prison officials "act deliberately and indifferently to serious medical

needs of prisoners in their custody." *See* <u>Hunt v. Uphoff</u>, 199 F.3d 1220, 1224 (10th Cir.1999); *see also* Estelle v. Gamble, 429 U.S., 97, 104 (1976). To demonstrate deliberate indifference, a prisoner must satisfy both an objective and a subjective prong. *See* <u>Al-Turki v. Robinson</u>, 762 F.3d 1188, 1192 (10th Cir. 2014).

Not every claim of inadequate medical treatment rises to the level of a constitutional violation. For example, claims of medical malpractice or medical negligence have been determined to not equate to a constitutional violation. *See* <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986) (Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety"). Likewise, a disagreement over the course of treatment has been held to not amount to a constitutional violation.

Oklahoma DOC policies were followed at the Davis Correctional Facility. The inmates confined at that facility were Oklahoma DOC inmates, placed at that facility by Oklahoma DOC pursuant to an incarceration services contract between Oklahoma DOC and CoreCivic, Inc. Oklahoma DOC had promulgated Policy OP-140147, entitled Management of Gender Nonconforming Inmates. *See* Policy 140147, ROA Vol. II., Doc# 010110881266, Pgs. 60-66.

To determine whether an inmate is gender nonconforming, paragraph II of OP-140147 directs that the following be taken into consideration – A. Self-identification as gender nonconforming by completing a "self-report form; B. Diagnosis of Gender

Dysphoria has been confirmed by a qualified mental health professional based on the diagnostic criteria of the *Diagnostic and Statistical Manual of Mental Disorders*; C. Inmate's appearance and/or behavior does not match the gender identity on his or her documents. *See* Policy140147, ROA Vol II., Doc# 010110881266, Pgs. 61-62.

Paragraph IV(C)(1) of Oklahoma DOC policy OP-140147 outlined the process for when hormonal treatment of inmates with gender dysphoria may be undertaken. According to the DOC policy hormonal treatment may be undertaken only after all the following occurs – (a) Diagnosis of Gender Dysphoria has been confirmed by a qualified mental health professional based on the diagnostic criteria of the *Diagnostic and Statistical Manual of Mental Disorders*; and, (b) Male to Female Hormonal Therapy Risk Information Form is read, signed by the inmate and scanned into the inmate's electronic health record. *See* Policy 140147, ROA Vol II., Doc# 010110881266, Pgs. 63.

According to the policy at paragraph IV(C)(2), once the above steps have been completed, hormonal treatment may be considered by the qualified medical provider if the following – (a) Hormonal treatment was initiated prior to incarceration; or, (b) Surgical castration has occurred, verified by examination and/or medical records; or, (c) The facility medical provider determines hormone treatment is medically necessary and approval from the Chief Medical Officer is obtained. *See* Policy 140147, ROA Vol II., Doc# 010110881266, Pgs. 63-64.

As of April 26, 2018, there was no *confirmed* diagnosis of Gender Identity Disorder reflected in Appellant Johnson's Oklahoma DOC medical file. About one month prior, on March 26, 2018, the medical provider at Dick Conner Correctional Center, Beth Wagener, PA-C, had messaged the Chief Mental Health Officer for Oklahoma DOC (Dr. Janna Morgan) and the Oklahoma DOC staff psychologist (Dr. Particia Jones) asking whether Dr. Jones had completed an evaluation of Appellant Johnson. Dr. Jones later responded that she had not yet performed an evaluation of Appellant Johnson.

Appellant Johnson was evaluated by Dr. Jones on May 1, 2018. Dr. Jones, the Gender Identity Disorder evaluator for Oklahoma DOC, interviewed Plaintiff-Appellant about her family, social and transgender history, her education and employment history, her social and relational history, her criminal history, and her psychiatric and substance abuse history. *See* Dr. Jones' Report, Vol II. DOC# 010110881266 Pgs. 226-234.

Dr. Jones considered all of Appellant's Oklahoma DOC medical records. Dr. Jones administered a mental status examination. Dr. Jones reviewed relevant self-report assessments. Dr. Jones conducted a field file review and a comprehensive review of Appellant's Offender Management System records. After all these reviews, Dr. Jones concluded that Appellant's expressed anger, anxiety, reported episodes of depression, substance use, and extreme difficulty in social situations were best

explained by Personality Disorder, <u>not</u> Gender Dysphoria. *See* Dr. Jones' Report at ROA Vol II. DOC# 010110881266, Pgs. 226-234.

When Appellant was transferred by Oklahoma DOC to Davis Correctional Facility on May 16, 2018, there was <u>no</u> *confirmed* diagnosis of Gender Identity Disorder in Appellant's medical record. As is clear from Appellant's medical records, an earlier notation of *suspected* Gender Identity Disorder had been rejected by the Oklahoma DOC's Gender Identity Disorder evaluator, Dr. Patricia Jones, by written report dated May 11, 2018.

Upon Appellant's arrival at the Davis facility, Appellant met with Victoria Shepherd, a member of the mental health staff. She completed a comprehensive mental health intake evaluation and on the comprehensive mental health evaluation form, she charted a *diagnosis* of <u>Personality Disorder NOS</u>, not a diagnosis of Gender Identity Disorder. *See* ROA Vol III., Doc# 010110881267 Pgs. 168.

Fred Sanders, D.O., was the medical provider at the Davis facility and Linda Lantrip, D.O., was the mental health provider at the Davis facility. On May 23, 2018, Dr. Sanders reviewed the Jones report, an eight-page comprehensive report and a one-page statement of general findings regarding Appellant Johnson. Dr. Sanders also reviewed Appellant Johnson's chart and he staffed the matter with the facility's mental health team and the facility's health services administrator. *See* ROA Vol II., Doc# 010110881266 Pg. 40, ¶18. Appellant's medical record contained no confirmed

diagnosis of Gender Identity Disorder. An earlier charting of suspected gender identity disorder had been rejected and a diagnosis of Personality Disorder NOS had been made by the Oklahoma DOC qualified mental health provider.

The case of <u>Sparks v. Singh</u>, 690 F. App'x 598 (10th Cir. 2017) is instructive. In that case, a questionable chart note of a history of diabetes was not considered to be a confirmed diagnosis requiring treatment and was not considered to be a clear directive for treatment. Here, Appellant's medical record contained no previous confirmed diagnosis of gender identity disorder. Prior to May 1, 2018, Appellant Johnson, in the custody of Oklahoma DOC, had not been previously seen and evaluated. *See* ROA Vol III., Doc# 010110881267 Pg. 43. As was noted by the District Court, Appellant Johnson, while in the custody of Oklahoma DOC, was subject to its processes and policies. The record available to Dr. Sanders and the team at Davis Correctional Facility was clear - when Appellant Johnson <u>was</u> seen and evaluated, a previous suspected gender identity disorder diagnosis was rejected and a Personality Disorder NOS was confirmed.

The District Court was correct to conclude that on these facts, no reasonable jury could infer deliberate indifference on the part of Dr. Sanders and Nurse Larimer.

There was no disregard of Appellant Johnson's medical or mental health needs. On May 23, 2018, Dr. Sanders proposed to slowly taper the dosage of medications (Estradiol and Spironolactone) whose continued use would be inconsistent with

Oklahoma DOC policy. Dr. Sanders charted he proposed to decrease the Spironolactone from 50mg to 25mg and continue for at least 6 months and to decrease the Estradiol from 2mg/day to 1mg/day for 3 months and to then discontinue. *See* ROA Vol II., Doc# 010110881266 Pg. 40, ¶20; *see also* Dr. Sanders' medical chart note of May 23, 2018, ROA Vol III., Doc# 010110881267 Pgs. 198-199. Mental health services were available to Appellant Johnson at the Davis facility. Appellant Johnson could ask for mental health services whenever Johnson felt assistance was needed by simply submitting a request for health services. Appellant Johnson knew how to use the request for health services process. Johnson submitted a request for health services on September 16, 2018, asking to see Ms. Shepherd. She met with Appellant the next day, September 17, 2018. *See* ROA Vol I., Doc# 010110881265 Pg. 351. When Nurse Larimer and Ms. Shepherd met with Appellant Johnson on May 23, 2018, Nurse Larimer told Appellant that Appellant would be followed by medical weekly to check blood pressure and general well-being. *See* ROA Vol III., Doc# 010110881267 Pg. 200. On October 15, 2018, Appellant was advised "if you have medical issues that need evaluated submit a request for health services." *See* ROA Vol I., Doc# 010110881265 Pg. 352. Appellant submitted a request for health services on March 31, 2019, indicating that she was having pain in her back, breast, and neck. The request was answered on April 2, 2019, stating that Appellant Johnson had refused Ibuprofen and Tylenol. *See* ROA Vol I., Doc# 010110881265 Pg. 363.

Counseling was available to Appellant. Medications were available to Appellant. Clinical support, both medical and mental health, was available to Appellant. Defendants did not deliberately ignore Appellant's medical and mental health needs. *See* Supre v. Ricketts, 792 F.2d 958, 963 (10th Cir. 1986). Appellant Johnson obviously disagreed with the diagnosis made by Dr. Jones and the course of treatment available consistent with Oklahoma DOC policy OP-140147 after a confirmed diagnosis was made by Dr. Jones. However, Appellant's disagreement does not make a constitutional violation.

The District Court was correct to conclude that on these facts, no reasonable jury could infer deliberate indifference to Appellant's medical needs by Dr. Sanders and Nurse Larimer.

Fred Sanders, D.O., was not a gatekeeper with regards to Appellant Johnson. Ray Larimer, R.N., was not a gatekeeper with regards to Appellant Johnson. Dr. Sanders is an experienced physician, practicing medicine since 1988. He had been employed full-time as a physician at Davis Correctional Facility since 2013. *See* ROA Vol II., Doc# 010110881266 Pg. 39, ¶1-3. Ray Larimer was an experienced Registered Nurse. He had been a Nurse since 1993. *See* ROA Vol II., Doc# 010110881266 Pg. 54, ¶3.

A medical professional is generally only considered a gatekeeper if the medical professional knows that his or her role in a particular medical emergency is solely to

serve as a gatekeeper for other medical personnel capable of treating the condition. Ordinarily, a medical professional will not be liable for this second kind of deliberate indifference because he or she is the person who provides the treatment. *See* Sealock v. Colorado, 218 F.3d 1205, 1211 (10th Cir. 2000); *see also* Crowson v. Washington County Utah, 983 F.3d 1166, 1179-1180 (10th Cir. 2020). That was certainly the case with Appellant Johnson and his needs at the Davis facility. Dr. Sanders, Dr. Lantrip, Nurse Larimer, and Ms. Shepherd were integral members of the medical staff and the mental health staff at the Davis facility prepared to deliver medical care and mental health care to Appellant's emergent needs and diagnosed needs.

On these facts, no reasonable jury could infer gatekeeper deliberate indifference to Appellant's medical needs by Dr. Sanders and Nurse Larimer.

Without a confirmed diagnosis of gender identity disorder, which was Step 1 under the Oklahoma DOC policy, there could be no further consideration of hormonal treatment of Appellant Johnson.

Based upon the records available to the District Court and the Court's careful review thereof, the Court correctly determined there were no genuine issues of material fact regarding Appellant's claim that Dr. Sanders and Nurse Larimer were deliberately indifferent to Appellant's medical needs. The District Court correctly noted that a disagreement by Appellant with Dr. Jones' report did not create a reasonable inference of deliberate indifference by Dr. Sanders or Nurse Larimer.

## CONCLUSION

The District Court did not err. The District Court's decisions were consistent with the record presented, the applicable law, clearly established standards of review, and the Federal Rules of Civil Procedure. This Honorable Court should affirm the Orders of the United States District Court for the Eastern District of Oklahoma.

## NECESSITY OF ORAL ARGUMENT

Oral argument would not materially assist in the determination of this appeal. *See* Federal Rules of Appellate Procedure 34(a), Tenth Circuit Rule 34.1. This cause should therefore be submitted without oral argument.

> Respectfully submitted,
> Defendants-Appellees
>
> By:  *s/ Darrell L. Moore*
> Darrell L. Moore, OBA #6332
> P.O. Box 368
> Pryor, OK  74362
> (918) 825-0332
> darrellmoore@jralphmoorepc.com
> Attorney for Defendants-Appellees

# CERTIFICATE OF COMPLIANCE

As required by Fed.R.App. 32(a)(7)(C), I certify that this brief is proportionally spaced and contains 5,003 words.

*Complete one of the following*:
[x] I relied on my word processor to obtain the count and it is Microsoft Word, by Microsoft Office.

[ ] I counted five characters per word, counting all characters including citations and numerals.

*s/ Darrell L. Moore*
DARRELL L. MOORE

# CERTIFICATE OF DELIVERY

This is to certify that on May 7, 2024, a true and correct copy of the Appellees' Supplemental Answer Brief was provided to the following:

All counsel of record

I further certify that on May 7, 2024, the original and seven true and correct copies of the Appellees' Brief were mailed, postage prepaid, and e-submitted, to:

Elizabeth Shoemaker
Clerk of the Court
United States Court of Appeals for the Tenth Circuit
Byron White United States Courthouse
1823 Stout Street
Denver, CO 80257

I further certify that all privacy redactions have been made to the attached document, and with all exception of those redactions, the document submitted in digital form is an exact copy of the written document filed with the clerk, and the digital submission has been scanned for viruses by Kaspersky, and according to the program is free of viruses.

*s/ Darrell L. Moore*
DARRELL L. MOORE